BARKETT, Circuit Judge,
concurring.
I agree that the district court’s denial of Henyard’s petition for habeas corpus must be affirmed because Henyard has not established that the state courts’ rejection of the claims he makes here was contrary to, or an unreasonable application of, clearly established federal law pursuant to the requirements of AEDPA. See 28 U.S.C. § 2254(d)(2); Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (applying the standard set forth in § 2254(d)(2)).
*1247 I write to address the separate and troubling issue of Henyard’s mental age. There is no dispute that Henyard committed a horrifying and heinous crime. There is also no dispute that, notwithstanding Henyard’s eighteen years of chronological age, he functions at the emotional level, or has the “mental age,”[1] of a thirteen year old.[2] The Supreme Court has stated that “[e]apital punishment must be limited to those offenders who commit ‘a narrow category of the most serious crimes’ and whose extreme culpability makes them ‘the most deserving of execution.’ ” Roper v. Simmons, 543 U.S. 551, 568, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quoting Atkins, 536 U.S. at 319, 122 S.Ct. 2242).
The twofold test for whether capital punishment violates the Eighth Amendment assesses its furtherance of the two major goals of punishment — retribution and deterrence. Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality). The test for retribution measures the culpability of the defendant or the class of offenders to which the defendant belongs. Tison v. Arizona, 481 U.S. 137, 149, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (“The heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender.” (emphasis added)); see also Penny v. Lynaugh, 492 U.S. 302, 337, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (O’Connor, J.) (“[Vjirtually all of the States with death penalty statutes that list statutory mitigating factors include as a mitigating circumstance evidence that ‘[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.’” (footnote omitted; second alteration in original)).
The Court considered a defendant’s culpability to be critical in Atkins:
Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders. Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.
536 U.S. at 318, 122 S.Ct. 2242.
Likewise, diminished culpability is what motivated the Court’s holding invalidating *1248 the juvenile death penalty in Simmons, wherein the Court stated that “[t]he same conclusions follow from the lesser culpability of the juvenile offender .... Retribution is not proportional if the law’s most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity.” Simmons, 543 U.S. at 571, 125 S.Ct. 1183. “Once the diminished culpability of juveniles is recognized, it is evident that the penological justifications for the death penalty apply to them with lesser force than to adults.” Id,.[3] Accordingly, the Court held that the Eighth Amendment prohibits the imposition of capital punishment on offenders under the age of eighteen at the time of offense.
The characteristics identified by the Court as those which diminish culpability and thus militate against the imposition of the death penalty for children under the chronological age of 18 as well as the mentally retarded appear equally present in those with a mental age of less than eighteen years. The mere fact of a borderline, or even high IQ in an adult defendant with a mental age of a child does not necessarily render that defendant any more culpable than a chronological child with a high IQ. It is not an inability to understand that one is breaking the law that factors against death sentences for children and the mentally retarded — even a small child realizes when she is breaking the rules. It is the child’s inability to understand why the rules exist, to appreciate the consequences of breaking them for herself and for society, and to consistently make judgments based on the foregoing which factor against sentencing children to death. As with children and the mentally retarded, mental age is not the result of a failure to abide by an expected standard, but an incapacity to evaluate and comprehend it.[4] The mere fact of a defendant’s *1249 chronological age should not qualify a defendant for death where the measures of capacity render him lacking in culpability. Although it may not be directly before us, at some juncture this issue must be addressed.

. " 'Mental age' is commonly understood is the chronological age equivalent of the person's highest level of mental capacity. That is, judging only from the person's cognitive and behavioral capacities, what age would we typically associate with this level of functioning? It is an incapacity to think or act on a higher level of functioning, not merely a failure to do so." James Fife, Mental Capacity, Minority, and. Mental Age in Capital Sentencing: A Unified Theory of Culpability, 28 Ham-line L.Rev. 237, 261 (2005) (footnote omitted) (citing Atkins v. Virginia, 536 U.S. 304, 310, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)).

. According to the Florida Supreme Court, the trial court found that, among other mitigating factors, Henyard was "acting under an extreme emotional disturbance and his capacity to conform his conduct to the requirements of law was impaired," Henyard v. State, 689 So.2d 239, 244 (Fla.1996), and that "the defendant functions at the emotional level of a thirteen year old and is of low intelligence,” id.

. "What mental capacity and minority share as avoidances is their deviation from the adult norm of knowledge and behavior. The rationale for identifying this basis for mitigation appears to be fairness: it is unfair to hold someone to a standard of conduct which she cannot attain given her current condition. Because one lacking the ability to reach this level of conduct does not breach the standard voluntarily, and so would not be deterred from breach by punishment, there is no legitimate basis for punishment under conventional punishment theory.” Fife, supra, at 260-61.

. Furthermore, the tests for determining mental retardation and mental age seem to measure the same skills that would contribute to one's culpability. The American Psychiatric Association criteria for mental retardation are:
A. Significantly subaverage intellectual functioning: an IQ approximately 70 or below on an individually administered IQ test.
B. Concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.
C.The onset is before age 18 years.
See American Psychiatric Association, Diagnostic and Statistical Manual of Menial Disorders 41 (4th ed. text revision 2000).
Similarly, mental age can be measured with increasing accuracy based on some of the same measures:
As the Supreme Court indicated in its discussion of mental retardation in Atkins, currently clinicians rely not only on intelligence scores derived from standardized tests, but also on the level of adaptive skills in communication, self-care and living skills, social skills, etc. Standard intelligence tests can be supplemented by other tests which correlate with IQ measures, but are less verbal-oriented, such as the Weschlser Memory Scale — Revised (WMS-R) or the Ravens Matrices Test. Clinical interviewing and background history can be used to help "triangulate” an accurate mental age along with pure cognitive assessments. Thus, the imprecision due to failure to *1249 measure other indicia of maturity such as experience, judgment, and empathy, can be readily addressed by current diagnostic methods. Fife, supra, at 271 (citations and footnotes omitted).